# EXHIBIT 3

POLICE DEPARTMENT
MEMORANDUM





DATE: 07/30/14

TO: Officer Jeff Nelson

FROM: Commander M. Caillier

SUBJECT: 14-INT-02

On July 30, 2014, a Supervisory Review Board was convened to consider the allegations against you. The board consisted of Sergeant Armstrong, Sergeant Clapp and I. The Board considered the COBAN recording, Officer Adams' statement and your statement.

Based on the Board's review of this investigation, the Board found **Actual Misconduct** on your part. The Board found that you violated the following Auburn City Policy and Procedures:

### Manual of Standards 7.6.3 Code of Conduct
X. Employees shall refrain from using coarse, profane, or insolent language to any member of the department or to citizens.

### Auburn City Policy and Procedure: Employee Conduct

200-81.4 It shall be the duty of employees to maintain high standards of cooperation, efficiency and integrity in their work with the city. It is the responsibility of employees to conduct themselves with professionalism and commitment towards customer service not only with citizens and the public of the City of Auburn, but also when working within one's own department or working with other departments within the city structure. If an employee's conduct falls below standard, he/she may be subjected to disciplinary action, up to and including termination of employment.

200-81.4.1 General areas for which an employee may be disciplined include bar are not limited to:

> 3. Failure to comply with any administrative directive or with the published administrative policies and procedures and/or department rules and procedures of the City.

25. Use of profanity or abusive language towards a fellow employee or member of the general public while performing official duties as a City employee.

**These policy violations are based on the following facts and circumstances:**

On 7/9/14, at approximately 2228 hours, you initiated contact with J▇ W▇, K▇ B▇, and R▇ D▇ in the 2300 block of I street northeast after you observed the subjects walking in the roadway. During the initial contact W▇ and D▇ were using profanity directed at you and walked away from the contact. Officer Adams, who had been on a nearby traffic stop, arrived to assist. Officer Adams' COBAN video was still recording due to the prior traffic stop and recorded the interaction.

During the course of the contact W▇ was extremely verbal towards you and Officer Adams. He was using extreme profanity and made several statements to effect that you should take off your badge and fight with him. Both he and D▇ were standing in the roadway during this verbal exchange.

You then began to engage in verbal sparring with W▇, and are heard on COBAN saying such things as "Fuck 'Cali" and "Fuck You." After several exchanges, you are heard to say to Officer Adams, "You want to fuck him up." You and Officer Adams then move out of the camera picture where you eventually deploy a Taser and utilized an LVNR to gain control of W▇. D▇ fled the location while you and Adams were engaged with W▇.

On 7/24/14, at approximately 0520, you were interviewed by Commander Hirman reference this incident. During the interview you acknowledged that you used obscenities during the contact with W▇ and D▇, but indicated it was a tactic to draw them to you out of the roadway. You indicated that when that tactic did not work and was "prolonging the situation", you turned to Officer Adams and stated "You want to fuck him up?". You described this phrase as indicating to Officer Adams that you were going to physically engage W▇ to affect the arrest and that W▇ would most likely fight.

You indicated during your interview that there was no intent on your part to "punish" W▇ and that is not what you meant by "You want to fuck him up? You also indicated that in retrospect that should have handled this differently in regards to giving W▇ easily understood commands and directions and what the consequences would be for not following your commands.

On 7/31/14, you notified me by e-mail that you were waiving your right to 48 hour notice prior to a Laudermill hearing and that you were not requesting Guild representation for the interview.

At approximately 1950 hours, I met with you in my office for a Laudermill Hearing. You did not have any new information regarding the incident. You did indicate that since the incident, you have been working at changing your verbal tactics when dealing with subjects to limit the use of profanity. You also indicated that you have been talking with other officers when you hear them use profanity directed at subjects and advising them to try other methods. You took full responsibility for you actions.

When dispensing discipline, the objective is to train and correct a deficiency. It is my belief that based on our discussion this incident appears to be a training issue in which you attempted a verbal tactic (use of profanity) that did not work, which resulted in the prolonging and escalation of the incident. We discussed the perception of the public and other department members when profanity is used and recorded on video. When viewing the video, you can not infer what the officer's intent of the profanity is and thus public perception is that an officer is unprofessional during said contact. We, as Police Officers, are held to a higher standard in the public's eye and must always be cognizant of how others may view our interactions.

This letter will then serve as notice of "**Coaching and Counseling**." You must be more aware in the future of when a tactic is not successful, you must change tactics to bring a quicker resolution to an incident.

J. Nelson APS612