# CITY OF AUBURN POLICE DEPARTMENT

COURAGE ★ HONOR ★ INTEGRITY ★ PROFESSIONALISM



8/28/18

Officer Statement- K9 Officer Jeff Nelson

This statement was administratively ordered by Commander Dan O'Neil.

This statement is reference to, and is the summary of my recollection of events, to Auburn Police case 18-11040.

On 8/23/18 I attended a briefing with SIU Detectives to assist them with the apprehension of Joseph Allen. The SIU Detectives were assisting U.S. Marshalls in the arrest of Allen for two outstanding felony warrants, one of which being a DOC escape related to a VUCSA charge. During that briefing U.S. Marshalls provided a detailed account of Allen's extensive violent felony criminal history, documented member of the Black Gangster Disciple, and some of his prior contacts with Law Enforcement that included fleeing from police. He was believed to be armed and extremely dangerous. They also advised that during a previous contact this year, he was armed with a gun, and made a comment to the Detective something to the effect of "The Officers were lucky I wasn't armed at the time", further making comments that he would have engaged the Officers at the time of his arrest had he still had the gun that he had dropped. Some of his other comments stated he would always be armed and would always run.

At the time of this operation I was wearing my duty issued uniform and driving a marked police vehicle. My role was to provide assistance with my K9 Partner to help with the arrest had he fled on foot. During the initial response, Allen was located by surveillance in Auburn at a residence. He was followed by undercover Detective vehicles as he left the residence on a motorcycle. I followed at a distance as the motorcycle drove west toward Federal Way. However, at one point during the follow, I was positioned close enough to see and observe Allen driving the motorcycle, providing me a clear visual identification of his clothing and helmet. Also during the follow, I heard surveillance confirm Allen's identity as the driver of the motorcycle.

I heard on the radio that Allen was seen entering the Walmart parking lot in Federal Way, parking within the lot. I stayed out of view while undercover surveillance units continued to move in closer. At one point I heard a female U.S. Marshall over the radio state Allen had gotten off his motorcycle and was now on foot walking toward another car in the parking lot. I heard someone on the radio state for others and myself to move in to affect the arrest. I drove to the access drive on the west side of the Walmart parking lot and heard Sgt Christian over the radio state Allen was running on foot, northbound in the lot. My impression at this point was that Allen was fleeing from law enforcement. As I moved south along the access road, I saw Allen jumping down from the rock wall along the west side of the Walmart parking lot, down onto the access road that I was now traveling south on, directly in front of my patrol car, about 100 yards away from me, still wearing his motorcycle helmet. I advised other units over the radio of his actions and movement west.

Allen continued west into a bank parking lot, and ran toward a dark green Ford Expedition that was occupied by a driver in the lot. As I started to turn the corner toward the parking lot of the bank, I noticed a female approaching the passenger side of the Ford. The female stopped and appeared startled with her arms partially raised in the air. Her actions made me believe she was in distress. I could see Allen's helmet visor partially open, and his actions on the passenger side made me believe he was attempting to gain entry into the car. Knowing the car was occupied by a driver, I believed he was attempting to carjack the Ford. As I was observing these actions, I heard Det Schultz advise over the radio that he too believed Allen was attempting to car jack the Ford. I continued to drive toward the Ford. As I was about 20 yards away, Allen appeared to turn his head toward me, at which time he disengaged from the Ford and turned south, running through some landscaping on the south side of bank. I realized he was now heading toward the Jack in the Box restaurant that borders the south side of the bank with a 10 yard separation between the two properties. In addition to the landscaping, there is a chain link fence between the two properties. I had driven past this area just prior to moving toward the Walmart, and had taken notice of the busy drive-thru and parking lot.

At this point, I knew that Allen had a very violent criminal history, that there was probable cause for his arrest as stated above, and that he was believed to be armed with a gun given his past comments and contacts. Given his current actions to attempt to escape from police today, his attempted carjacking of a vehicle in my presence, the heavily populated area that he was about to enter with access to occupied vehicles in the drive-thru, I feared that if Allen was allowed to escape, he posed an immediate threat of serious harm to the public. There appeared no other effective alternative to the use of force as he was running directly in front of my patrol vehicle, which forced me to respond by driving directly toward Allen to stop his actions and movement toward other citizens.

As a result, I drove west parallel along the property, driving over the curbing on the south side, striking Allen with the driver portion of my front bumper just as Allen was reaching the chain link fence. I drove past him while he appeared to be holding onto the fence as if he was still attempting to climb over. I was not sure what effect my strike had on Allen, if any. I stopped my patrol vehicle just past his position, and stepped out to confront Allen directly. As I did, I saw that he turned from the fence directly toward me, about 15 feet away. He then started to lower his body behind a row of bushes. I verbally told Allen he was under arrest, and to get down on the ground. Allen responded by remaining in a crouch position, but not moving further down. At this point I believed he was attempting to conceal his hands for an unknown reason. He refused to move away from the bushes and to get down fully.

In response to Allen's refusal to cooperate, I ran forward toward him in order to quickly close the distance in the event that he was attempting to gain access to a weapon or gun that was concealed on or near his body. I had thought of deploying my K9, but realized the K9 would not be able to engage him faster than my own response. I jumped on top of Allen, who was still within the line of bushes. I again gave him verbal commands to get on the ground. I used his helmet to assist me with controlling his head as he fell backward onto the ground and bushes. Allen responded by kicking his legs and trying to push away from me. I provided him verbal commands to stop resisting, and to remain on the ground. Allen continued to refuse my commands, and was kicking his legs and pushing me in an apparent attempt to escape. I

struggled to maintain control of him while holding his helmet and placing pressure on his body with my own body weight.

At this point Sgt Christian arrived and assisted me with attempting to control Allen. He too began verbal commands to Allen to stop resisting and to show us his hands.  At some point, I heard  a U.S. Marshall behind us, who had arrived and was attempting to control Allen's feet, scream "Gun Gun Gun, don't move toward that gun".  Fearing that Allen was attempting to gain access to a gun, I drew my firearm from my duty belt holster, and pointed it directly at Allen's head.  This was the only location on his body that I knew would not create a danger to other Officers or citizens, and still provide a lethal response had Allen gained control of the gun.  I gave Allen verbal commands to not make any further movements toward the gun, or I would respond by shooting him.  He looked directly at me as I was talking to him.  I looked down and saw the U.S. Marshall removing a handgun from the area of Allen's abdomen.   Once the threat was stopped, and his gun was secured, I holstered my gun.

With the assistance of several other Detectives, we were able to place Allen into handcuffs.

Under the circumstances, I believed my actions were reasonable in order to stop Allen from escaping, and that no other effective use of force appeared to exist at that time.


Respectfully Submitted,

K9 Officer Jeff Nelson