The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSEPH LOREN ALLEN,

Defendant.

NO. CR18-292 JCC

**GOVERNMENT'S SENTENCING MEMORANDUM**

Joseph Allen comes before the Court for sentencing after pleading guilty to Count 1: Felon in Possession of a Firearm [May 28, 2018], Count 3: Possessing Methamphetamine with Intent to Distribute [August 23, 2018], and Count 4: Possessing a Firearm in Furtherance of a Drug Trafficking Crime [August 23, 2018].

Mr. Allen has a long history of unlawfully possessing firearms, stealing cars, and eluding police in a dangerous manner. Despite being a convicted felon, he possessed two different handguns on two different dates, only three months apart. Both of these guns were fully loaded and ready to fire, and he carried these loaded guns while he committed other felony crimes and while he recklessly fled from police who had lawful authority to stop and arrest him. To address Mr. Allen's willful disregard for the safety of other people, and to protect the public, the United States recommends the Court impose a sentence of 108 months in custody, followed by five years of supervised release.

*United States v. Joseph Allen*, CR18-292 JCC
Government's Sentencing Memorandum - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# I. FACTS OF THE OFFENSES

## A. The May 28, 2018 Arrest.

On May 28, 2018, an Auburn Police Department (Auburn PD) patrol officer ran a car's license plate and learned that the car had been stolen. The officer tried to stop the stolen vehicle, but the driver, later identified as Joseph Allen, sped away at a speed of over 50 to 60 miles per hour. The entire lengthy pursuit was filmed on the officer's in-car video. Mr. Allen drove through at least 1.4 miles of a residential area—running multiple red lights and driving into oncoming lanes on hills and curves with limited visibility—before an Auburn PD officer attempted to stop Mr. Allen's car with a pursuit intervention technique (PIT). The stolen car did at least one full 360-degree spin, briefly stopped, and then drove away again, with its trunk damaged and the trunk door fully open. Mr. Allen later told police that he intentionally placed the gear of the car in neutral during the PIT maneuver so that the car's engine would not die as it spun out.

The officers resumed the pursuit, and several moments later, managed to catch up to Mr. Allen's car to perform another PIT maneuver. The second PIT maneuver also failed to stop Mr. Allen. Finally, the officers performed a third PIT maneuver and, this time, the car crashed into a ditch. After Mr. Allen's car crashed, he ran out of the vehicle on foot, through a residential neighborhood, and the pursuing officers lost sight of him.

A K-9 unit quickly located Mr. Allen hiding in some bushes. Mr. Allen had a holster on the inside of his waistband, but no gun on his person. Mr. Allen told the officers that he used the holster to store his phone. He denied having a gun but told the officers that, if he had a gun, "I would have shot at you." This statement was recorded on an officer's in-car video.

Officers searched the area for a gun but did not find one. The following morning, Auburn PD received a call from a man who lived in the residential neighborhood where Mr. Allen fled from police and was eventually arrested. The man found a handgun in his backyard, and he thought it might be related to the police activity he heard behind his

*United States v. Joseph Allen*, CR18-292 JCC
Government's Sentencing Memorandum - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

house the previous night.  The gun was a stolen, loaded, Sig Sauer .40 caliber semi-automatic pistol with a round in the chamber.

In a post-arrest, post-*Miranda* interview, after the pistol was recovered, Mr. Allen initially continued to deny that he possessed the gun.  Later in the interview, however, he admitted that the gun was his.  He said, "I got out of the car and thought, get rid of the gun, get rid of the gun, get rid of the gun."  As Mr. Allen left the interview room, he told a corrections officer, "I knew they would find that gun."

**B.     The August 23, 2018 Arrest.**

Mr. Allen failed to appear for a court hearing related to his May 28, 2018 arrest and a warrant issued.  Around the same time, a Washington State Department of Corrections (DOC) warrant issued for Mr. Allen's failure to report for supervision.  On August 23, 2018, Mr. Allen was located by a Violent Crime Task Force that included members of Auburn PD and the United States Marshals Service. Mr. Allen was riding a motorcycle, which made it particularly difficult to apprehend him.  The task force followed Mr. Allen until he briefly got off his motorcycle near a Wal-Mart in Federal Way.  As the arrest teams moved in, Mr. Allen ran from them on foot.

As the officers chased Mr. Allen, they saw him approach an unaffiliated, occupied vehicle.  The officers were concerned that Mr. Allen would try to carjack that vehicle, or another vehicle, in an effort to escape.  They later learned that Mr. Allen had approached the vehicle occupants and offered them $1000.00 to help him flee the area.  When they refused, Mr. Allen attempted to enter their vehicle without permission.  Fortunately, the occupants were able to lock the vehicle's doors before Mr. Allen could get inside, and they signaled for the police.  Mr. Allen fled the area as the police approached.

Mr. Allen continued to run and eventually reached a fence.  As he was running, an officer struck him with a patrol car to prevent him from escaping over the fence, where the officers would be unable to pursue him.  Mr. Allen was successfully apprehended, but the collision broke both of his ankles.

*United States v. Joseph Allen*, CR18-292 JCC
Government's Sentencing Memorandum - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Officers searched Mr. Allen incident to arrest. In a pocket of the motorcycle vest he was wearing, Mr. Allen carried a fully loaded Taurus 9mm caliber handgun, with one round in the chamber. In another pocket of his vest, Mr. Allen carried 41.4 grams of methamphetamine, 10 grams of marijuana, and numerous empty plastic baggies. The officers searched Mr. Allen's motorcycle and found a scale.

## II. THE SENTENCING GUIDELINES

The government agrees with Probation that the total offense level for Count 3: Possession of Methamphetamine with Intent to Distribute (after acceptance of responsibility) is 25. PSR ¶¶ 20-31. The government also agrees that Mr. Allen has 21 criminal history points, which places him in Criminal History Category VI. PSR ¶¶ 32-45. Accordingly, Mr. Allen's Sentencing Guideline Range is 110 to 137 months in custody, consecutive to 60 months in custody for Count 4: Possession of a Firearm in Furtherance of a Drug Trafficking Offense, which results in a combined Sentencing Guideline Range of 170 to 197 months in custody. PSR ¶ 45.

## III. THE UNITED STATES SENTENCING RECOMMENDATION

### a. Nature and Circumstances of the Offenses.

Mr. Allen's offenses were egregious. He has been prohibited from possessing a firearm since 1999. Yet, in both of these incidents, Mr. Allen carried a fully loaded firearm with a round in the chamber, ready to fire, while he committed several other crimes and tried to escape police officers who had lawful authority to stop and arrest him. It is particularly aggravating that, during the August 2018 incident, Mr. Allen had been released on bond, pending trial for the May 2018 incident, and he was also on DOC supervision.

Mr. Allen denies attempting to carjack a vehicle during his attempted escape on August 23, 2018. His track record of stealing cars and running from police does not inspire confidence in his denials. Regardless, the police were perfectly justified in their belief that he had tried to carjack one vehicle, and their concern that he would potentially try to carjack others.

*United States v. Joseph Allen*, CR18-292 JCC
Government's Sentencing Memorandum - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### b. History and Characteristics of the Defendant.

Mr. Allen's background is unquestionably mitigating. In recognition of that fact, and despite the egregiousness of his offenses, the government is recommending a sentence that is over five years below the bottom of the sentencing guideline range, and below even the maximum sentence that the government would be entitled to recommend under the plea agreement.

Even while acknowledging Mr. Allen's difficult childhood and poor education, the government cannot ignore the pattern of blatant disregard for other people that is also a significant component of his history and characteristics. Mr. Allen has two prior convictions for unlawfully possessing firearms. PSR ¶¶ 33, 34. He has another conviction for driving a stolen car that contained the receiver for a Glock 9mm pistol, along with a police scanner that was actively broadcasting Fife police dispatches. PSR ¶ 40. In 2014, while driving in another stolen car, Mr. Allen fled police at speeds over 90 miles per hour. PSR ¶ 42. A few months later, Mr. Allen attempted to elude police in yet another stolen car, this time at speeds over 110 miles per hour. PSR ¶ 43. Nothing in Mr. Allen's history or background compels him to endanger the public. He chooses to steal cars, possess guns, distribute drugs, and drive recklessly to escape the police. His choices may be explained, at least in part, by the lack of support he received as a child, but they are still his choices.

### c. The Need to Protect the Public.

Under Washington law, the crime of attempting to elude police requires proof that an individual willfully both failed to stop for police *and* that he drove away "in a rash and heedless manner, indifferent to the consequences." Rev. Code of Wash. § 46.61.024; Washington Pattern Jury Instructions (WPIC) 90.05 (defining "reckless manner"). Mr. Allen has already been convicted of this crime twice, and he attempted to elude police for a third time on May 28, 2018. By definition, this means that Mr. Allen understands that his conduct is dangerous to other people, *yet continues to do it anyway.* Each of these eludes, including the one on May 28, 2018, was a vehicular homicide waiting to happen.

*United States v. Joseph Allen*, CR18-292 JCC
Government's Sentencing Memorandum - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

To make matters worse, he was armed with a stolen, loaded gun during the elude. This kind of conduct, if it continues after his release from custody, is going to get someone killed.

Mr. Allen's conduct is all the more aggravating due to the sheer number of wrongful decisions he made that endangered himself, police officers, and, worst of all, innocent bystanders. In May 2018, he decided to steal a car from an innocent person. While driving the stolen car, he armed himself with a loaded gun that he could not legally possess. When the police tried to stop him, he decided that he would try to elude them by driving 60 miles-per-hour in a 35-mile per hour zone, veering into oncoming lanes, and running a red light. When a *third* PIT maneuver finally stopped Mr. Allen's car, he decided to run on foot and ditch the gun. And after he was apprehended, he told the arresting officers that he would have shot at them if he had a gun.

When Mr. Allen was charged with offense related to his May 2018 arrest, he decided not to appear for court. Instead, he chose to hide from the court and DOC, and drive a vehicle that would make him more difficult to apprehend. Then he decided to deal methamphetamine, and, while engaging in that illegal activity, he once again armed himself with a loaded gun that he could not legally possess. When the police tried to arrest him for his warrants, he decided to run. He was so motivated to escape the police, that he tried to enter a stranger's car—still armed with the loaded, chambered gun that he illegally possessed.

Even now, Mr. Allen is eager to make excuses that deflect responsibility onto everyone else, including police, prosecutors, Congress, the Federal Detention Center, schools, and his mother. Remarkably, he still refuses to acknowledge that his choices endangered the community. Instead, he treats his life experiences like a license to commit crime.

Mr. Allen has committed the same kinds of crimes over and over again throughout his life. If he cannot appreciate his responsibility for creating a risk of harm, and if he does not understand—or care—that his decisions are likely to hurt innocent people, then

*United States v. Joseph Allen*, CR18-292 JCC
Government's Sentencing Memorandum - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

he will continue to endanger the public with the same decisions after he is released from custody.  Accordingly, the government asks the Court to impose a sentence that protects the public, underscores the seriousness of his offenses, and emphasizes his individual responsibility for those offenses, while still reflecting the mitigating aspects of his background and circumstances.

### IV. CONCLUSION

For the foregoing reasons, the United States respectfully asks the Court to sentence Mr. Allen to 108 months in custody, followed by five years of supervised release.

DATED this 3rd day of December, 2019.

Respectfully submitted,

BRIAN T. MORAN
United States Attorney

*/s/ Jessica M. Manca*
JESSICA M. MANCA
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone: 206-553-4397
Email: Jessica.Manca@usdoj.gov

*United States v. Joseph Allen*, CR18-292 JCC
Government's Sentencing Memorandum - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2019, I have electronically filed the foregoing with e Clerk of the Court using the CM/ECF system that will send notification of such filing to the attorney of record for the defendant.

*/s/ Jessica M. Manca*
JESSICA M. MANCA
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone: 206-553-4397
Email: Jessica.Manca@usdoj.gov

*United States v. Joseph Allen*, CR18-292 JCC
Government's Sentencing Memorandum - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970